# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NORTHEASTERN DIVISION

SHEILA DIANNA BALL,

      Plaintiff,               NO. 2:17-cv-00017

vs.                          CHIEF JUDGE WAVERLY D. CRENSHAW, JR.
                               Magistrate Judge Kemp
NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.


To: The Honorable Waverly D. Crenshaw, Jr., Chief Judge


## REPORT AND RECOMMENDATION

      This is an action instituted under the provisions of 42 U.S.C. §§ 405(g) and 1383 to review a final decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits and supplemental security income. Plaintiff filed a motion for judgment on the administrative record on June 8, 2017 (Doc. 19) and the Commissioner responded on July 6, 2017 (Doc. 20). Plaintiff filed a reply to the response on July 18. 2017 (Doc. 21). For the following reasons, it will be recommended that Plaintiff's motion be **DENIED** and that this action be **DISMISSED**.

### I. Background

      Plaintiff filed her applications for benefits on September 9, 2013, asserting that she became disabled on March 1, 2002 due to back pain, foot pain, and obesity. On December 13, 2013, both applications were denied, and Plaintiff's request for reconsideration was denied on March 24, 2014. She then asked for a hearing before an Administrative Law Judge (ALJ), and that hearing was held on October 5, 2015. Both Plaintiff and a vocational expert, Edward Smith, testified at the hearing. Also, through counsel, Plaintiff amended her alleged onset date to November 18, 2013, effectively eliminating her application for disability insurance benefits under Title II. (Tr. 47).

      In a decision dated January 21, 2016, the ALJ determined that Plaintiff did not meet the requirements for disability. Plaintiff sought review of that decision from the Appeals Council, but that appeal was denied on January 11, 2017. The case is now before this Court to determine which party is entitled to judgment on the administrative record (Doc. 17).

## II. The Findings and Conclusions of the ALJ

In his decision, the ALJ made the following findings of fact and conclusions of law (with some legal references omitted):

1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2007.

2. The claimant has not engaged in substantial gainful activity since November 18, 2013, the alleged onset date.

3. The claimant has the following severe impairments: degenerative disc disease, obesity and dysfunction of major joints.

4. The claimant does not have an impairment of combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except occasional climbing of ramps, stairs, ladders, ropes and scaffolds with frequent stooping, kneeling, crouching and crawling.

6. The claimant is capable of performing past relevant work as an assistant manager fast food, biscuit maker, short order cook and waitress. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from November 18, 2013, through the date of this decision.

## III. Plaintiff's Claims

Plaintiff asserts the following statement of errors;

1. The ALJ failed to properly consider the opinions of record.

2. The ALJ erred at Step 4 in finding Plaintiff can perform her past relevant work and at Step 5 in finding that she could perform other work.

Memorandum in support, Doc. 19, at 6-7.

### IV. Standard of Review

This Court has set forth the applicable standard of review in this fashion:

> This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means " 'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id*. (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 Fed.Appx. 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. *See Hernandez v. Comm'r of Soc. Sec.,* 644 Fed.Appx. 468, 473 (6th Cir. 2016) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).
>
> Accordingly, this Court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller*, 811 F.3d at 833 (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014)).

*Allen v. Berryhill*, 273 F. Supp. 3d 763, 770 (M.D. Tenn. 2017)

### V. Summary and ALJ's Evaluation of Relevant Evidence

#### A. Hearing Testimony

Plaintiff, who was born in 1959 and is now 58 years old, testified at the administrative hearing that she had worked in the past, but was not sure when she stopped working. She said she had been diagnosed with degenerative disc disease in her back accompanied by bone spurs. She had not had regular treatment for her back for a number of years. She was currently taking two medications, Tramadol and ibuprofen, for her back pain.

Plaintiff also testified that she had broken her left foot years ago and that her left ankle was crushed at some point. Even though that happened ten years ago, she continued to have pain and swelling in her ankle. She had twisted her ankle a few times since, but was not seeing a doctor for any foot or ankle problems. According to Plaintiff, after standing for about thirty minutes, she would have to sit down and prop up her foot. She also had trouble wearing normal shoes.

A doctor had told Plaintiff that she could only lift up to twenty pounds because of her back problems. Also, she could not sit for more than a hour due to pain in her low back and hips. She lived alone and was, for the most part, able to do her own household chores, although her daughter would help her occasionally. She did chores slowly and had to be careful bending over. She had to lie down at least once a day and sometimes more often. (Tr. 50-65).

The vocational expert, Edward Smith, was first asked to identify Plaintiff's past relevant work. He said she had been an assistant manager in a fast food setting, a biscuit maker, a short order cook, and a waitress. These jobs were either light or medium in exertion, and they ranged from semi-skilled to skilled. He further testified that if Plaintiff were limited to performing medium work with certain restrictions, she could do all of these jobs. Additionally, she could do jobs like production machine operator, production laborer, and hand packager. All those jobs are medium and unskilled.

Plaintiff was then asked some additional questions about her shoulder, and said that she had a right shoulder injury about a year before which made it painful for her to reach above her head with her right arm. She had a similar restriction on the use of her left arm. (Tr. 68-71).

Based on this testimony, Mr. Smith was asked to assume that Plaintiff had that limitation, plus additional limitations in her ability to sit and stand (up to two-thirds of the day), walk (up to one-third of the day), and lift and carry (up to 20 pounds). He was further asked to assume that she had to elevate her feet up to 30 minutes at a time and at least four times per day, and that she would be off task up to 90% of the day due to pain. He said that with or without that last restriction, Plaintiff could not be employed.

### B. Medical Evidence

Plaintiff's Statement of Errors focuses primarily on two medical opinions (apart from the reviews done by the state agency physicians, Drs. Cross and Millis, both of whom concluded that Plaintiff could do a limited range of medium work, with restrictions on climbing, stooping, kneeling, crouching, and crawling). The two significant opinions came from Dr. Dorris, the consultative examiner, and Dr. Lowe, a treating source.

Dr. Dorris saw Plaintiff on October 21, 2013. At that time, Plaintiff reported only back and foot pain. Plaintiff said her back injury occurred when she was in her twenties and that she had been advised to be careful about lifting. She had also injured both feet in the past, and had

some cracking and popping in the left foot when she walked. Propping her feet up was not particularly helpful. Plaintiff complained of pain during range of motion studies by was able to perform the exam within normal limits. Her feet showed no abnormalities. Dr. Dorris did not observe any muscle spasms in the back area. Plaintiff could walk normally and had normal reflexes and muscle strength. The diagnoses were chronic lumbago and chronic bilateral foot pain. Dr. Dorris thought Plaintiff could sit, stand, and walk for six hours each during a work day, could lift 50 pounds occasionally and 20 pounds frequently, and should avoid heights and operating very heavy machinery. (Tr. 292-96). Subsequently, reviewing x-rays, Dr. Dorris reported that Plaintiff had a significant bone spur on her right heel as well as bunion formation, and she had mild bone spurring at multiple levels of the lumbosacral spine and mild diminishment in joint space. (Tr. 300).

On January 29, 2015, Dr. Harold Lowe of the Rural Health Clinic of the Cumberlands saw Plaintiff as a new patient. She had been referred by her disability attorney because he could not get satisfactory records from her treating doctors at the Health Department. Plaintiff complained of pain and swelling in her feet and ankles and pain in her back. She was having some problems walking due to foot pain. Dr. Lowe observed 1+ swelling in the right ankle and prescribed Lasix. He continued her on Tramadol and ibuprofen and scheduled another appointment in six weeks. (Tr. 315). No record from that or any other visit to Dr. Lowe appears in the record. Dr. Lowe subsequently completed a Medical Source Statement, dated September 21, 2015, on which he stated that Plaintiff could lift 11-20 pounds, could never raise either arm over shoulder height, had extreme pain, would be off task 90% of the time due to pain, needed to elevate her legs four times per day for 30 minutes at a time, and would have to lie down two or three times per day as well. (Tr. 361-62).

### C. The ALJ's Decision

After finding that the medical records documented only three severe impairments - degenerative disc disease, obesity, and dysfunction of the feet - the ALJ noted that there was no medical evidence suggesting that any of these impairments was of sufficient severity to satisfy the criteria found in the Listing of Impairments. He then determined Plaintiff's residual functional capacity through an analysis of the medical evidence and her testimony at the administrative hearing.

First considering Dr. Dorris's report, the ALJ concluded that Dr. Dorris's assessment of Plaintiff's residual functional capacity was "consistent with the weight of the medical evidence" and he "gave them (sic) great weight...." (Tr. 33). The ALJ then summarized the records from the Rural Health Clinic and Dr. Lowe's medical source statement, but he did not immediately describe the weight given to that statement. Next, the ALJ described the conclusion of the state agency reviewers and found them also to be "consistent with the weight of the medical evidence of record," giving them "great weight" as well. (Tr. 34). He then included a paragraph about mental disorders, which does not appear to have any relationship to this record, and made his residual functional capacity finding. At no time did the ALJ appear to acknowledge that Dr. Lowe was a treating source, and at no time did he either assign specific weight to Dr. Lowe's

-5-

opinion or analyze that opinion under the applicable regulation.

## VI. Discussion

Citing to *Wilson v. Comm'r of Social Security*, 378 F.3d 541, 546-47 (6th Cir. 2004), Plaintiff argues that the ALJ's failure to weigh the opinion of a treating source is reversible error. She argues that it simply cannot be determined from the ALJ's decision how much weight, if any, was given to Dr. Lowe's opinion, and if that opinion were followed, there would be no basis for concluding that Plaintiff could perform any of her past relevant work. The Commissioner does not take issue with the fact that the ALJ performed no analysis of Dr. Lowe's opinion, but argues nonetheless that the decision is supported by substantial evidence. The Commissioner contends that it is obvious that the ALJ did not give any significant weight to Dr. Lowe's opinion because the restrictions cited by Dr. Lowe do not appear in the ALJ's findings, and suggests - but does not strenuously argue - that any error in this case is harmless under *Wilson*.

Plaintiff alleges a violation of the "treating source" rule found in 20 C.F.R. §416.927(c). As this Court has explained,

> The opinion of an examining non-treating source is given greater weight than that from a non-examining source and an opinion from a treating source is afforded greater weight than an examining non-treating source. *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1502, 404.1527(c)(1), (2)). "A treating physician's opinion is normally entitled to substantial deference, but the ALJ is not bound by that opinion. The treating physician's opinion must be supported by sufficient medical data. *Jones* [*v. Comm'r of Social Security*], 336 F.3d [469 (6th Cir. 2003)], at 477 (citation omitted). Thus, "[t]reating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.' " *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). "Moreover, when the physician is a specialist with respect to the medical condition at issue," the specialist's "opinion is given more weight than that of a non-specialist." *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing 20 C.F.R. § 404.1527( [c] )(5)).
>
> "If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for her rejection." *Jones*, 336 F.3d at 477. The regulations provide that an ALJ must provide "good reasons" for discounting the weight of a treating source opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for

that weight.' " *Blakley*, 581 F.3d at 406–07 (6th Cir. 2009) (quoting SSR 96–2p, 1996 WL 374188, at *5).

*Mcwhorter v. Berryhill*, 2017 WL 1364678, at *8–9 (M.D. Tenn. Apr. 14, 2017). It is true that "[a]n ALJ need not articulate a factor-by-factor analysis of a non-controlling treating source opinion" such a failure can be excused only if "the ALJ actually considers the listed factors and provides 'good reasons' for the weight given to the opinion." *Williams-Lester v. Soc. Sec. Admin.*, 2016 WL 4442797, at *25 (M.D. Tenn. Aug. 18, 2016).

The Commissioner correctly states that there is a harmless error exception to the treating physician rule. However, that exception is narrow. As this Court noted in *Allen v. Berryhill, supra,* at 775, the situations where that exception is applied are rare. *Wilson* itself pointed out the goals served by having an ALJ give good reasons for rejecting the opinion of a treating source and explained that an expansive application of harmless error would significantly undercut the mandatory nature of the rule. This is not a case where Dr. Lowe's opinion is so patently deficient that no portion of it could be credited by a reasonable person, and the Commissioner does not make that argument. It is also not a case where the ALJ's analysis satisfied the spirit, if not the letter, of the rule. As this Court has consistently done in other cases, this case must be remanded to the Commissioner for proper application of the treating physician rule. *See Allen v. Berryhill, supra*; *see also Mosley v. Colvin,* 2013 WL 4718987, at *21 (M.D. Tenn. Aug. 30, 2013) (ordering remand where "the record provides substantial evidence that the ALJ did not give controlling weight to the opinion of [the treating physician], provided good reasons for his decision, and considered the appropriate factors in deciding what weight to give, all in compliance with 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2))."

## VII. Recommendation

For all the reasons set forth above, the Court **RECOMMENDS** that the Motion for Judgment (Doc. 23) be **GRANTED**, that the decision of the Commissioner be **REVERSED**, and that this case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g).

## VIII. Procedure on Objection

If any party seeks review of this Report and Recommendation by the assigned District Judge, that party may, within 14 days, file and serve on all parties written objections to the Report and Recommendation which specifically identify the part of the Report to which objection is made as well as the reasons supporting that objection. *See* 28 U.S.C. 636(b)(1); Fed.R.Civ.P. 72(b). Any response must be filed withing 14 days thereafter. Failure to object to a Report and Recommendation waives any right to obtain *de novo* review by the District Judge and waives any issues that might otherwise be raised on appeal. *See, e.g., Robert v. Tesson,* 507

F.3d 981,994 (6th Cir. 2007)

                                                                /s/ Terence P. Kemp
                                                                United States Magistrate Judge